KAPLIN STEWART MELOFF REITER & STEIN, P.C.
BY: AMY L. SANTAMARIA, ESQUIRE (AS6092)
457 HADDONFIELD ROAD, SUITE 310
CHERRY HILL, NEW JERSEY  08002
(856) 675-1550
(856) 675-1551 FACSIMILE
OUR FILE NO. ███████████

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY (TRENTON)

| | | |
|---|---|---|
| **In re:** | : | Chapter 13 |
| | : | |
| JOSEPH F. DEROSE | : | Bankruptcy Case No. 12-38344 (MBK) |
| | : | |
| | : | Hearing Date: 2/6/2013 @ 9:30 am |
| | : | |
| | : | **OBJECTION OF SECURED** |
| | : | **CREDITOR, BANK OF AMERICA,** |
| | | **N.A., BY ITS SERVICER GREEN TREE** |
| | | **SERVICING LLC, TO** |
| | | **CONFIRMATION OF DEBTOR'S** |
| | | **CHAPTER 13 PLAN** |

TO:    Joseph DeRose
       295 Savannah Road
       Toms River, NJ  08757

       William H. Oliver, Jr., Esquire (via electronic filing)
       Brandywine Commons
       2240 Highway 33, Suite 112
       Neptune, NJ  07753
       Attorney for Debtors

       Albert Russo (via Electronic Filing)
       Chapter 13 Standing Trustee
       CN 4853
       Trenton, NJ  08650-6888

TO THE HONORABLE MICHAEL B. KAPLAN, UNITED STATES BANKRUPTCY

JUDGE:

       Bank of America, N.A., by its Servicer, Green Tree Servicing LLC ("Green Tree") by

and through its undersigned counsel, hereby objects pursuant to 11 U.S.C. §1322, §1324 and

§1325 to confirmation of the Debtor's Chapter 13 Plan.  In support of this Objection, Green Tree states the following:

## JURISDICTION

1.        On December 3, 2012 ("the Petition Date"), Joseph Frank DeRose ("the Debtor") filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code.

2.        This matter arises under 11 U.S.C. § 1324 and §1325 and Federal Rule of Bankruptcy Procedure 3015(f) and is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(L). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157(a) and 1334.

## BACKGROUND

3.        On or about May 16, 2007, Debtor executed and delivered to Bank of America, N.A., a note ("the Note") and mortgage ("the Mortgage") of even date in the amount of $30,000. A true and correct copy of the Note and Mortgage (collectively "the Loan") are attached hereto, collectively marked as Exhibit "A" and are incorporated herein by reference as though fully set forth at length herein.  The Mortgage was also given by the Debtor's spouse, Filomena DeRose.

4.        The Mortgage has been duly recorded with the Clerk of Ocean County on June 8, 2007, in Mortgage Book 13667 Page 1101 et seq.

5.        Green Tree is the Servicer for Bank of America, N.A., in connection with the Note and Mortgage.

6.        The real property, which is the subject of the Mortgage is known as 295 Savannah Road, Toms River, New Jersey  08757 ("the Mortgaged Premises").

7.        On December 3, 2012, the Debtor filed her Chapter 13 Plan ("the Plan"), which requires the Debtor to submit to the Chapter 13 Trustee the sum of $526.00 per month for sixty (60) months.  The total amount to be paid under the Plan is $31,560.00.

8.        Green Tree filed a timely Proof of Claim in the amount of $4,238.72 in arrears and a total secured claim of $27,808.66.

9.        The Plan proposes to cram down Green Tree's Mortgage lien to $0.00.

### GROUNDS FOR OBJECTION

10.     In order for the Debtor to cure his default to Green Tree he must finance the pre-petition arrears on Green Tree's Mortgage of $4,238.72 over sixty (60) months  and therefore, the Debtor would be required to submit to the Trustee an additional amount of $70.65 per month. The Debtor would further be required to keep all post-petition payments to Green Tree in the monthly amount of  $264.92 current.

11.     The Debtor proposes to pay $0.00 on account of  Green Tree's secured claim. The Debtor, however, cannot establish that the value of the Mortgaged Premises does not support Green Tree's secured claim.  The Debtor's Schedules assign a value of approximately $199,261.00  to the Mortgaged Premises. It seems that the Debtor's stated value is the total amount due on the first mortgage held by GMAC Mortgage, LLC.  GMAC Mortgage, LLC, despite having filed objections to confirmation, has not filed a Proof of Claim.  Green Tree is in second mortgage lien position.  The value of the Mortgaged Premises is $232,000.00, as evidenced by Green Tree's appraisal attached hereto.  As there is clearly equity in the Mortgaged Premises to support Green Tree's secured claim, the Plan fails to adequately treat Green Tree's secured claim. See 11 U.S.C. §506.

12.     The Debtor's Plan further violates 11 U.S.C. §1322(b)(2) in that it attempts to modify Green Tree's secured claim secured by the Mortgaged Premises, which is the Debtor's principal residence.

13.     The amount the Debtor proposes to pay on account of Green Tree's allowed secured claim is not sufficient to satisfy the total amount of the claim nor is it enough to cure the pre-petition arrears and remain current with all post-petition payments.  The Debtor's Plan also does not propose to surrender the property securing the claim.  The Debtor's Plan therefore does not conform to the requirements of 11 U.S.C. §1322(b)(3) or (5) or (8).  The Debtor's Plan further violates 11 U.S.C. §1325(a)(1) and (5)(B)(i) and (ii) and (C) and should not be confirmed.

14.     This Court may not confirm the Plan under 11 U.S.C. §1325(a)(5) because:

(a)     Green Tree does not accept the Plan;

(b)     the Plan does not provide for Green Tree to retain its lien until it is paid in full;

(c) the value, as of the effective date of the Plan, of property to be distributed under the Plan on account of Green Tree's secured claim is less than the allowed amount of such claim; and

(d) the Debtor does not propose to surrender the Mortgaged Premises to Green Tree.

15.     The value, as of the effective date of the Plan, of the property to be distributed under the Plan on account of Green Tree's allowed secured claim is less than the amount that would be paid on such claim if the Debtor's estate were liquidated under Chapter 7 of Title 11 of the United States Code.  Debtor's Plan therefore violates 11 U.S.C. §1325(a)(4) and should not be confirmed.

16.     Green Tree reserves the right to raise any other objections at the time of the confirmation hearing.

WHEREFORE, Bank of America, N.A., by its Servicer, Green Tree Servicing LLC respectfully requests this Court to enter an Order sustaining these objections and denying confirmation of the Debtor's Chapter 13 Plan and grant such other relief as the Court may deem just and proper.

KAPLIN STEWART MELOFF REITER & STEIN, P.C.
Attorneys for Secured Creditor

/s/ Amy L. SantaMaria
By:    Amy L. SantaMaria _____

Date:  January 30, 2013.

**LPS**
LENDER PROCESSING SERVICES

**FieldExpert** ™

| Order ID | ████████ | | Loan Number<br>Client Project ID | ████████ |
|---|---|---|---|---|

## Client Provided Data

| | | | |
|---|---|---|---|
| Client | GREEN TREE INVESTMENT MANAGEMENT, LLC | Loan # | |
| Branch | SERVICING | Attention | Herschel Hoyt |
| Fax/Email | | Borrower | DEROSE, JOSEPH F |
| Address | 295 SAVANNAH RD | Property Type | Single Family Dwelling |
| City | TOMS RIVER | State/Zip | NJ 08757 |
| Completed by | Krohn, Alan | Company | Crossroads Realty |

Phone # 732-245-1642

## Neighborhood Information

| | | | |
|---|---|---|---|
| Neighborhood Type | Suburban | Property Values | Depreciating |
| Price Range | $205,000 - $369,000 | Vandalism/vacant properties | No |
| Marketing time (days) | 161 | Market trend (Appr/Depr %) | -10 |
| Predominant Occupancy | Owner | | |
| Similar Homes Sold Prior Month | 2 | # of Listings in Direct Competition | 35 |
| Zoning | Residential | | |

## Subject Property Information

| | | | |
|---|---|---|---|
| Curb Appeal | Average | Estimate cost to cure deferred maintenance | $0 |
| Conformity to neighborhood | Appropriate Improvement | Any adverse influences noted (busy street, etc) | No |
| Condition | Average | Market Rent | $1,500 |
| Currently Occupied? | Yes | Secured? | N/A |
| Is there a guest house? | No | Guest House Sq Ft | N/A |
| Occupied By? | Unknown | Construction Started? | No |
| Subdivision Name | N/A | Partially Vacant | N |
| For Rent | N/A | For Rent By | N/A |
| Rental Contact Phone | N/A | | |

## Current Listing and Five Year Sale History

| | | | |
|---|---|---|---|
| Subject currently listed? | No | Listed in last 12 mos.? | No | Listing date | | Listing price | |
| MLS# N/A | | Listing Agency N/A | | | | Agency Phone # | N/A |

| Previous Sale Price | Previous Sale Date | Buyer | Seller |
|---|---|---|---|
| | | | |

### Neighborhood and Subject Property Comments:

All homes are located in Pine Lake Park section of Manchester Twp. Neighborhood is popular with first time buyers. Sales are occurring but at lower prices.

## Comparable Listings

| | Subject | Listing 1 | | Listing 2 | | Listing 3 | |
|---|---|---|---|---|---|---|---|
| Street Address | 295 SAVANNAH RD | 1217 2nd Ave | | 1133 Birmingham Ave | | 1339 8th Ave | |
| City | TOMS RIVER | Toms River | | Toms River | | Toms River | |
| State/Zip | NJ 08757 | NJ 08757 | | NJ 08757 | | NJ 08757 | |
| Data Source | Tax | MLS 21222190 | | MLS 21220262 | | MLS 21226160 | |
| # Units | 1 | 1 | | 1 | | 1 | |
| Listing Type | | ArmsLength | | ArmsLength | | ArmsLength | |
| List Price | N/A | $219,500 | 0 | $225,000 | 0 | $239,000 | 0 |
| Original List Price | N/A | $229,000 | | $240,000 | | $239,000 | |
| Days on Market | N/A | 180 | | 196 | | 146 | |
| Distance (mi) | N/A | 0.84 | 0 | 0.78 | 0 | 0.94 | 0 |
| Neigh.Type | Suburban | Suburban | 0 | Suburban | 0 | Suburban | 0 |
| Site Size (Ac) | 0.34 | 0.23 | 4500 | 0.23 | 0 | 0.23 | 4500 |
| View | No | No | 0 | No | 0 | No | 0 |
| Design | Ranch | Ranch | 0 | Ranch | 0 | Ranch | 0 |
| Condition | Average | Average | 0 | Average | 0 | Average | 0 |
| Age (Years) | 29 | 35 | 5200 | 59 | 11800 | 27 | 0 |
| Bedrooms | 4 | 4 | 0 | 3 | 4000 | 3 | 4000 |
| Baths | 3 | 2 | 4000 | 2.5 | 2000 | 2 | 4000 |
| Living Area (s.f.) | 1,634 | 1,756 | -4300 | 1,572 | 0 | 1,634 | 0 |
| Basement | Full Unfinished | None | 10000 | Full Unfinished | 0 | None | 10000 |
| % Finished | N/A | N/A | | N/A | | N/A | |
| Pool | None | Above Ground | 0 | None | 0 | None | 0 |
| Garage | 0.00 | 1.00 | -2500 | 1.00 | -2500 | 0.00 | 0 |
| Adjusted Values | Net Adj (%) | 7.7% | 236400 | 6.8% | 240300 | 9.4% | 261500 |
| | Gross Adj (%) | 13.9% | | 9% | | 9.4% | |

### Comments regarding the comparability of listings to the subject specifically addressing their overall similarity (equal/superior/inferior)

Listing #1: Inferior; No basement, oil heat
Listing #2: Similar GLA
Listing #3: Inferior; Very similar, but noi basement

FieldExpert™

| Order ID | | Loan Number | |
|---|---|---|---|
| | | Client Project ID | |

## Comparable Sales

| | Subject | Sale 1 | | Sale 2 | | Sale 3 | |
|---|---|---|---|---|---|---|---|
| Street Address | 295 SAVANNAH RD | 1809 Third Ave | | 1941 10th Ave | | 1112 Beacon St | |
| City | TOMS RIVER | Toms River | | Toms River | | Toms River | |
| State/Zip | NJ 08757 | NJ 08757 | | NJ 08757 | | NJ 08757 | |
| Data Source | Tax | MLS 21202633 | | MLS 21135624 | | MLS 21218273 | |
| # Units | 1 | 1 | | 1 | | 1 | |
| Sale Type | | ArmsLength | | Shortsale | | ArmsLength | |
| Financing Type | | FHA | | Conventional | | FHA | |
| List Price | N/A | $234,999 | 0 | $235,000 | 0 | $250,500 | 0 |
| Sale Price | | $220,000 | 0 | $240,000 | 0 | $246,000 | 0 |
| Sale Date | N/A | 08/26/2012 | 0 | 06/26/2012 | 0 | 10/12/2012 | 0 |
| Days on Market | N/A | 144 | | 203 | | 91 | |
| Distance (mi) | N/A | 1.44 | 0 | 1.58 | 0 | 1.51 | 0 |
| Neigh. Type | Suburban | Suburban | 0 | Suburban | 0 | Suburban | 0 |
| SiteSize (Ac) | 0.34 | 0.29 | 0 | 0.23 | 4500 | 0.29 | 0 |
| View | No | No | 0 | No | 0 | No | 0 |
| Design | Ranch | Ranch | 0 | Ranch | 0 | Colonial | 0 |
| Condition | Average | Average | 0 | Average | 0 | Average | 0 |
| Age (Years) | 29 | 19 | -7000 | 5 | -10900 | 13 | -9600 |
| Bedrooms | 4 | 4 | 0 | 3 | 4000 | 3 | 4000 |
| Baths | 3 | 2 | 4000 | 2 | 4000 | 2.5 | 2000 |
| Living Area (s.f.) | 1,634 | 1,520 | 4000 | 1,840 | -7200 | 1,788 | -5400 |
| Basement | Full Unfinished | None | 10000 | Full Unfinished | 0 | Full Unfinished | |
| % Finished | N/A | N/A | | N/A | | N/A | |
| Pool | None | None | 0 | None | 0 | None | 0 |
| Garage | None | 0.00 | 0 | 2.00 | -5000 | 2.00 | -5000 |
| Adjusted Values | Net Adj (%) | | 5% | 231000 | -4.8% | 209400 | -5.7% | 232000 |
| | Gross Adj (%) | | 11.4% | | 16.2% | | 10.6% | |

Comments regarding the comparability of listings to the subject specifically addressing their overall similarity (equal/superior/inferior)

Sale #1: Inferior; Less GLA, no basement
Sale #2: Superior; More GLA 2 car garage
Sale #3: Superior; More GLA 2 car garage

## RECONCILIATION

Based upon the description of the subject and the market data presented within the report, LPS Applied Analytics has derived values based on the following market conditions as of: 12/13/2012

Per the current agent the subject property is occupied and is not listed for sale at this time. Based on the use of the most recent and proximate comps the value as of today is well supported. Adjustments were made for differences in age, bed/bath count and GLA.

| | Reconciled Market Sale Value | Reconciled Quick Sale Value | Broker's Value |
|---|---|---|---|
| "As Is" Value: | $232,000 | $226,000 | $245,000 |
| "As Repaired" Value: | $232,000 | $226,000 | $245,000 |

## Exterior Repair Addendum

| Item Category | Cost to Cure | Comments |
|---|---|---|
| Roof | $0 | |
| Exterior/Siding | $0 | |
| Foundation | $0 | |
| Construction in Progress | $0 | |
| Outbuildings | $0 | |
| Yard Maintenance | $0 | |
| Other | $0 | |
| Total | $0 | |

LPS' Comparative Market Analysis products, such as Field Expert, offer an opinion derived from analysis based on inspection of the subject property and analysis of the local market data as performed by a licensed real estate professional. Information in the report may be gathered from multiple sources, including but not limited to multiple listing services (MLS), public records, public records data services, city/county office websites, proprietary files, mapping services, or may be provided by the client. In some cases information on the subject property may be limited or unavailable, and, in some instances, may be derived from an exterior inspection of the property. The information provided assumes, unless otherwise stated in the report, the subject property is in average condition, contains no environmental, structural, or title related defects, the real property interests are fee simple, and the information relied upon is accurate. The report is based upon data that is deemed generally acceptable for products of this type. The analysis of an interest in real property for ownership or collateral purposes is prepared for the above named client only. The intended use is to assist the designated client in making an independent, internal decision regarding the subject property. The use of this report by anyone other than the client for any purpose is not permitted or authorized by Lender Processing Services, Inc., including its subsidiaries and affiliates ("LPS"). Any other use of the report by any other party is prohibited. This document is not an appraisal. The product is provided "AS IS", and no guarantee or warranty is provided. LPS will not be liable for any loss, damage or injury arising out of, or in conjunction with, the client's utilization of the information contained in this report. If this report is intended to be used for loan origination purposes, the loan transaction value must be $250,000.00, or less, as required by Title XI of FIRREA.

**Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.**

# Field Expert ™

Order ID

Loan Number
Client Project ID

## Location Map



This map can be viewed interactively by clicking here.

## Satellite Image



**Field**Expert™

| Order ID | ■■■■■■■ | Loan Number<br>Client Project ID | ■■■■■■■ |

**Subject Photo**



**Street Scene Photo**



**Address Verification Photo**



Field Expert™

Order ID

Loan Number
Client Project ID

**Comparable Listing 1     1217 2nd Ave, Toms River, NJ 08757**



© Monmouth/Ocean MLS

**Comparable Listing 2     1133 Birmingham Ave, Toms River, NJ 08757**



© Monmouth/Ocean MLS

**Comparable Listing 3     1339 8th Ave, Toms River, NJ 08757**



© Monmouth/Ocean MLS

Field Expert ™

Order ID

Loan Number
Client Project ID

**Comparable Sale 1     1809 Third Ave, Toms River, NJ 08757**



© Monmouth/Ocean MLS

**Comparable Sale 2     1941 10th Ave, Toms River, NJ 08757**



03.03 14:40
© Monmouth/Ocean MLS

**Comparable Sale 3     1112 Beacon St, Toms River, NJ 08757**



© Monmouth/Ocean MLS



9339 Carroll Park Drive, Suite 100, San Diego, C█████████  www.hanqual.com

| OrderID: ██████ | Order Date: 12/12/2012 | Loan Number: ██████ |



| | Subject | | NOD | | NOS | | Foreclosure | | REO Sale | | Short Sale | | Retail Sale |

## Statistical Summary (Last 90 days)

| Radius of Search | 2.0 mi | | |
|---|---|---|---|
| Notice of Default | 0 | Notice of Sale | 0 |
| Foreclosure Transactions Completed | 0 | REO Sales Completed | 3 |
| Retail Sales | 76 | Short Sales | 0 |

## Notice of Default
No data available

## Notice of Sale
No data available

## FC Transactions
No data available

## REO Sales

| | Transaction Address | Dist from Subject | Prop Type | GLA | Bed | Baths | Sale Date | Sale Price |
|---|---|---|---|---|---|---|---|---|
| Sub | 295 SAVANNAH RD | | SFR | 1,634 | NA | NA | NA | NA |
| 1 | 1212 MIDDLESEX ST | 0.60 mi | SFR | NA | NA | NA | 11/05/2012 | $125,000 |
| 2 | 552A MAYFAIR RD | 1.21 mi | SFR | NA | NA | NA | 10/01/2012 | $59,000 |
| 3 | 13 MARACAIBO PL | 1.58 mi | SFR | 1,232 | NA | NA | 10/18/2012 | $70,000 |

## Short Sales
No data available

9339 Carroll Park Drive, Suite 100, San Diego, CA 92121 t 858.909.4300 f 858.909.2900 www.hanqual.com

**Current**Research

Order ID▮                              Order Date: 12/12/2012                    Loan Number▮

**Retail Sales**

| | Transaction Address | Dist from Subject | Prop Type | GLA | Bed | Baths | Sale Date | Sale Price |
|---|---|---|---|---|---|---|---|---|
| Sub | 295 SAVANNAH RD | | SFR | 1,634 | NA | NA | NA | NA |
| I | 855A WINCHESTER CT | 0.45 mi | SFR | 1,243 | NA | NA | 09/21/2012 | $65,000 |
| 2 | 810A WESTMINSTER CT # 810-A | 0.47 mi | SFR | NA | NA | NA | 10/12/2012 | $85,000 |
| 3 | 840B LIVERPOOL CIR | 0.51 mi | SFR | NA | NA | NA | 11/13/2012 | $80,000 |
| 4 | 879B WINCHESTER CT | 0.53 mi | SFR | NA | NA | NA | 11/09/2012 | $111,500 |
| 5 | 781A LIVERPOOL CIR # 781-A | 0.61 mi | SFR | NA | NA | NA | 09/27/2012 | $69,500 |
| 6 | 913B LIVERPOOL CIR | 0.62 mi | SFR | NA | NA | NA | 09/25/2012 | $71,000 |
| 7 | 756A LIVERPOOL CIR | 0.65 mi | SFR | NA | NA | NA | 09/26/2012 | $84,000 |
| 8 | 744C LIVERPOOL CIR | 0.71 mi | SFR | NA | NA | NA | 10/18/2012 | $70,000 |
| 9 | 702B LIVERPOOL CIR # 702-B | 0.74 mi | SFR | 1,602 | NA | NA | 10/19/2012 | $85,000 |
| 10 | 995B BUCKINGHAM DR | 0.85 mi | SFR | NA | NA | NA | 10/09/2012 | $90,000 |
| II | 912 PEMBERTON ST | 0.86 mi | SFR | NA | NA | NA | 10/11/2012 | $150,000 |
| 12 | 1069B CANTERBURY DR | 0.98 mi | SFR | NA | NA | NA | 11/09/2012 | $112,000 |
| 13 | 1039A CANTERBURY DR | 1.01 mi | SFR | NA | NA | NA | 11/08/2012 | $145,000 |
| 14 | II PAVILION ST | 1.03 mi | SFR | NA | NA | NA | 09/25/2012 | $85,000 |
| 15 | 1024B THORNBURY LN # 1024B | 1.03 mi | SFR | NA | NA | NA | 09/21/2012 | $165,000 |
| 16 | 1017 JAMAICA BLVD | 1.04 mi | SFR | NA | NA | NA | 11/14/2012 | $80,000 |
| 17 | 1164B THORNBURY LN # 1164B | 1.05 mi | SFR | 1,193 | NA | NA | 11/05/2012 | $109,900 |
| 18 | 132B BUCKINGHAM DR | 1.07 mi | SFR | NA | NA | NA | 10/24/2012 | $54,500 |
| 19 | 1033A THORNBURY LN | 1.09 mi | SFR | 1,479 | NA | NA | 09/28/2012 | $97,500 |
| 20 | 1031A THORNBURY LN | 1.10 mi | SFR | NA | NA | NA | 11/13/2012 | $106,000 |

Copyright © 2011 Lender Processing Services, Inc. All Rights Reserved



RECORDED 06/08/2007 08:37:15 AM
CARL W. BLOCK, COUNTY CLERK
OCEAN COUNTY, NEW JERSEY

Deroso Jr. Joseph

Loan Number:

Record and Return To:
Fiserv Lending Solutions
27 Inwood Road
**ROCKY HILL, CT 06067**

This Instrument Prepared By: **cecile moock**
Bank of America, NA
100 North Tryon Street
Charlotte NC 28255

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated    MAY 16, 2007    , together
with all Riders to this document.
**(B)** **"Borrower"** is    JOSEPH F DEROSE JR, FILOMENA DEROSE

Borrower is the mortgagor under this Security Instrument.
**(C)** **"Lender"** is    Bank of America, NA

Lender is a    National Banking Association                                      organized
and existing under the laws of THE UNITED STATES OF AMERICA
Lender's address is    100 North Tryon Street, Charlotte, North Carolina
28255

Lender is the mortgagee under this Security Instrument.
**(D)** **"Note"** means the promissory note signed by Borrower and dated    MAY 16, 2007
The Note states that Borrower owes Lender    THIRTY THOUSAND AND 00/100
Dollars (U.S. $  30,000.00   )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than    MAY 21, 2027
**(E)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.



JOSEPH F DEROSE JR/
NEW JERSEY SECOND LIEN MORTGAGE
10/10/06

Page 1 of 12

DocMagic eFDrmns 800-649-1362
www.docmagic.com

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1 - 4 Family Rider | ☐ Home Improvement Rider | ☐ Revocable Trust Rider |
| ☐ Other(s) [Specify] | | |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) Reserved.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) Reserved.

(N) "Periodic Payment" means the regularly scheduled amount due for principal and interest under the Note.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. 601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the

<table>
<tr><td>COUNTY</td><td>of</td><td>OCEAN</td></tr>
<tr><td>[Type of Recording Jurisdiction]</td><td></td><td>[Name of Recording Jurisdiction]</td></tr>
</table>

Being the same property conveyed and described in a Deed
recorded among the land records of the County set forth above:   OF.

Deed recorded in BOOK ███████████████████

*manchester twp*

which currently has the address of   295 SAVANNAH RD
                                                    [Street]

TOMS RIVER   , New Jersey   087572322   ("Property Address"):
[City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject
to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.   Borrower and Lender covenant and agree as follows:
   1.  Payment of Principal, Interest, Prepayment Charges, and Late Charges. Borrower shall pay when due
the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due
under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However,
if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned
to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security
Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)
certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution
whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such
payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower
might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and
this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
   2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments
accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note;
and (b) principal due under the Note. Such payments shall be applied to each Periodic Payment in the order in which
it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under
this Security Instrument, and then to reduce the principal balance of the Note.
   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient
amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If

JOSEPH F DEROSE JR/ ████████████████
NEW JERSEY SECOND LIEN MORTGAGE
10/10/06                                    Page 3 of 12

DocMagic *eRorms* 800-649-1362
www.docmagic.com

more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Reserved.**

**4. Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security instrument that is a lien having priority over this Security Instrument. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

Except for a lien Borrower disclosed to Lender in Borrower's application or in any title report Lender obtained, Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such

JOSEPH F DEROSE JR.
NEW JERSEY SECOND LIEN MORT____
10/10/06

Page 4 of 12

DocMagic *eForms* 800-649-1362
www.docmagic.com

policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

8. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property,

JOSEPH F DEROSE JR
NEW JERSEY SECOND LIEN MORT
10/10/06

Page 5 of 12

DocMagic *eForms* 800-649-1362
www.docmagic.com

and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Reserved.**

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender, subject to the terms of any mortgage, deed of trust, or other security instrument with a lien which has priority over this Security Instrument.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

JOSEPH F DEROSE JR
NEW JERSEY SECOND LIEN MORT
10/10/06
Page 6 of 12

DocMagic *eForms* 800-649-1362
www.docmagic.com

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

JOSEPH F DEROSE JR
NEW JERSEY SECOND LIEN MORT
10/10/06

DocMagic *eForms* 800-649-1362
www.docmagic.com

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

JOSEPH F DEROSE JR
NEW JERSEY SECOND LIEN MORT
10/10/06

DocMagic
800-649-1362
www.docmagic.com

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

JOSEPH F DEROSE JR/
NEW JERSEY SECOND LIEN MORTG...
10/10/06

12

DocMagic *eFarms* 800-649-1362
www.docmagic.com

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at    2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services   rendered and the charging of the fee is permitted under Applicable Law.

23. **No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

JOSEPH P DEROSE JR
NEW JERSEY SECOND LIEN MORT
10/10/06

_____ [Space Below This Line For Acknowledgment] _____

State of New Jersey,

County of __OCEAN_____ , ss

    I CERTIFY that on __5/14/07_____     JOSEPH F DEROSE JR, FILOMENA

DEROSE _____

_____ ,

personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a)    was the maker of the attached instrument; and

(b)    executed this instrument as his or her own act.


_____     5/16/07

Notary's Signature                Date

                 **ELLEN M. HARMER**
                 **NOTARY PUBLIC**
                 **STATE OF NEW JERSEY**
                 MY COMMISSION EXPIRES OCT. 3, 2008

Notary's printed or typed name

My commission expires: __10-3-08_____

JOSEPH F DEROSE JR
NEW JERSEY SECOND LIEN MORT
10/10/06            Page 12 of 12         DocMagic *eForms* 800-649-1362
                                                 www.docmagic.com

BENEFICIARY REQUESTS NOTICE OF ANY ADVERSE ACTION
THAT A PRIORITY LIEN HOLDER TAKES WITH REGARD TO
THE PROPERTY, INCLUDING DEFAULT AND FORECLOSURE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JOSEPH F DEROSE JR          -Borrower

_____ (Seal)
FILOMENA DEROSE             -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

JOSEPH F DEROSE JR
NEW JERSEY SECOND LIEN MOR
10/10/06

DocMagic eForms 800-649-1362
www.docmagic.com



**Ocean County**
**Document Summary Sheet**

RECORDED 06/08/2007 08:37:15 AM
CARL W. BLOCK, COUNTY CLERK
OCEAN COUNTY, NEW JERSEY

OCEAN COUNTY

PO BOX 2191

COURTHOUSE

TOMS RIVER NJ 08754

*Official Use Only*

| Transaction Identification Number | |
|---|---|

| | |
|---|---|
| Submission Date *(mm/dd/yyyy)* | 06/05/2007 |
| No. of Pages *(excluding Summary Sheet)* | 12 |
| Recording Fee *(excluding transfer tax)* | $140.00 |
| Realty Transfer Tax | $0.00 |
| Total Amount | $140.00 |

**Return Address** *(for recorded documents)*

FISERV LENDING SOLUTIONS

27 INWOOD RD

ROCKY HILL CT 06067

| Document Type | MORTGAGE |
|---|---|

**Municipal Codes**

MANCHESTER TOWNSHIP                    19

**Electronic Recordation Level**

SS - SUMMARYSHEET

**Bar Code(s)**

**Additional Information (Official Use Only)**

*** DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF OCEAN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**Ocean County**
**Document Summary Sheet**

| Type | MORTGAGE | | | |
|---|---|---|---|---|
| Consideration | $30,000.00 | | | |
| Submitted By | FISERV LENDING SOLUTIONS | | | |
| Document Date | 05/16/2007 | | | |
| Reference Info | Book ID | Book | Beginning Page | Instrument No. |
| | | | | |

| MORTGAGOR | Name | | Address | |
|---|---|---|---|---|
| | JOSEPH F DEROSE JR | | | |
| | FILOMENA DEROSE | | | |

| MORTGAGEE | Name | | Address | |
|---|---|---|---|---|
| | BANKF OF AMERICA | | 100 N. TRYON ST,CHARLOTTE,,NC 28255 | |

| Parcel Information | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*• DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF OCEAN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 2 of 2

# PROMISSORY NOTE

Account Number: ███████████

Date: MAY 16, 2007

Lender Name and Address: Bank of America, NA
100 North Tryon Street, Charlotte, North Carolina 28255

Borrower's Name: JOSEPH F DEROSE JR

Property Serving as Security (the "Property"): 295 SAVANNAH RD, TOMS RIVER, NEW JERSEY 08757-2322

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I ("Borrower") have received, I promise to pay U.S. $ 30,000.00 (this amount will be called "Principal"), plus interest, to the order of Bank of America, N.A. (the "Lender" or "you").
If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. The term "Borrower," I, or me refers to each person who signs this Note. Any guarantor, surety, or endorser of this Note is also obligated to do these things. The Lender may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**2. INTEREST**
I will pay interest at a yearly rate of      8.740%.   Interest will be charged on unpaid Principal until the full amount of Principal has been paid.

**3. PAYMENTS**
I will pay Principal and interest by making payments each month of U.S. $ 264.92
I will make my payments on the 21st day of each month beginning on JUNE 21, 2007
I will make these payments every month until I have paid all of the Principal and interest and any other charges, described below, that I may owe under this Note. If, on MAY 21, 2027                    , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
Unless otherwise agreed or required by applicable law, payments will be applied first, to all interest due and owing on the date payment is credited, then to Principal, then to fees or other charges due under this Note, including unpaid collection costs and late charges. Interest on this Note is computed on a 365/365, simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in one year (or 365), multiplied by the outstanding Principal balance, and multiplied by the actual number of days in the year that the Principal balance is outstanding. I will pay the Lender at Lender's address shown above or at such other place as Lender may designate in writing.

JOSEPH F DEROSE ██████████████████

NEW JERSEY PROMISSORY
SECOND LIEN
NJSEC.BOA 09/01/05

DocMagic *CRooms* 800-649-1362
www.docmagic.com

### 4. PAYMENT INFORMATION

You may accept late payments, partial payments or payments marked "payment in full," "without recourse," or similar language or payments accompanied by a letter stating that your acceptance of the payment indicates your agreement to the terms set forth in the letter without giving up, waiving or losing any of your rights under law or under this Note.

If I make a payment(s) before or after the due date, the amount of my final payment may be higher or lower than the original payment schedule. I will make all payments in U.S. dollars, payable through a United States financial institution or the U.S. Post Office. You will credit payments to this Note on the business day received if received before 2:00 P.M. at the location you specify or at one or your banking centers in the state of the Lender's address first described above. Otherwise payments may not be credited to my loan for up to five (5) business days, even if payment is received under your arrangement with an affiliated bank to accept payments from your customers or at one of your ATMs. A business day is any day, Monday through Friday, that is not a legal holiday. Unless otherwise required by applicable law, to determine whether a late charge is due, you will apply any payment received to the oldest payment due.

### 5. PREPAYMENT

I may make a full prepayment or a partial prepayment without paying any penalty. The Lender will apply all prepayments to reduce the amount of Principal that I owe under this Note. This may result in my making fewer payments. Early payment will relieve me of my obligation to continue to make payments under the payment schedule and will be applied to the next due payment. If a prepayment is insufficient to meet the entire requirement of a particular future installment ,then I shall be obligated to pay such portion of the installment not covered by the partial prepayment. My obligation to continue to make regular payments under the payment schedule will resume with the next payment coming due after all early payments have been applied.

### 6. LATE CHARGE

If a payment is 15 days or more late, I will be charged 4.00% of the unpaid portion of the regularly scheduled payment.

### 7. DISHONORED ITEM FEE

I will pay a fee to the Lender of $20.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

### 8. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 9. RELEASE OF LIEN

As permitted by applicable law, when I pay off my Note in full and request a satisfaction of mortgage, a full reconveyance, certificate of discharge or similar instrument denoting that my loan has been paid in full, I will pay the actual cost of recording a release/satisfaction of the Security Instrument (as defined below) as required by the recording office where the Security Instrument is located.



JOSEPH F DEROSE J
NEW JERSEY PROMISSORY NO
SECOND LIEN
NJSEC.BOA 09/01/05

DocMagic CF*orms* 800-649-1362
www.docmagic.com

Page 2 of 7

**10. AUTOMATIC PAYMENT AND RESERVATION OF RIGHTS**

If I choose to have payments from a designated account that I have arranged with Lender to do so, you will automatically draft the payment. Drafts will be made on the payment due date or immediately after the payment due date, if the payment due date is on a Saturday, Sunday or a legal holiday. If my deposit account does not have sufficient funds to make the payment due, I understand that it is my obligation to, without notice from you, to make the full payment. Even if I make a manual payment, an automatic payment will be drafted from my designated account, unless I make such manual payment at least three (3) business days prior to the due date.

However, if I make less than the full manual payment at least three (3) business days prior to the due date, only the remaining amount currently due will be drafted. To stop an automatic draft, I must contact you at least three (3) business days prior to the scheduled payment draft date. If I have authorized automatic payment, then the following shall apply:

I hereby authorize Lender to draft the described account for my loan payments. I agree to the Recurring Automatic Payment Authorization Terms and Conditions that will be enclosed with my Automatic Payment confirmation notice, unless I otherwise notify the Lender. If I choose to establish automatic payment to draft my designated Bank of America account, the authorization will remain in full force and effect until the Lender has received written or verbal notification from me of its termination in such time and manner as to afford the Lender a reasonable opportunity to act on it. If, at any time, I elect to terminate my automatic payment, my Annual Percentage Rate will increase by 1/4 of 1% (.25%).

**11. NOTE SECURED BY COLLATERAL**

All amounts due under this Note are secured by a mortgage, deed of trust or other security instrument ("Security Instrument") on the Property identified on the first page of this Note. The Security Instrument and this Note are related agreements, and a default under either document will be treated as a default under both documents.

**12. DUE ON SALE**

In addition to the protections given to the Lender under this Note, the Security Instrument, dated the same date as this Note, protects the Lender from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**13. PROPERTY REQUIREMENTS**

I agree to do all things required in the Security Instrument to protect the Property. If you incur an expense because I do not fulfill all obligations of this Note, or if I or another party does not fulfill the obligations under the Security Instrument, I will pay those expenses under this Note. I also agree to obtain and maintain property insurance and flood insurance, if applicable, in an amount described in the Security Instrument. I will pay the premiums for such insurance, which may be subject to the interest rate under this Note.

If you incur any expense to protect your interest in the Property, including paying for any premium on required insurance that I did not obtain or maintain, I agree that you have the option to reschedule my payments for the

JOSEPH F DEROSE JR
NEW JERSEY PROMISSORY NOT
SECOND LIEN
NJSEC.BOA 09/01/05

DocMagic ℰℱ𝑜𝑟𝑚𝑠 800-649-1362
www.docmagic.com

remaining term of my loan under this Note (thus increasing the regularly scheduled payment to incorporate the amount of the insurance premium and/or other expenses that you incurred, plus finance charges thereon), to require a lump sum payment at the maturity of this Note, or demand payment of the insurance premium(s) and/or your other incurred expenses to protect your interest in the Property.

## 14. DEFAULT

I will be in default under this Note if any of the following happens:

1. I fail to make a payment when due under this Note.

2. I break any promise made to the Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or any agreement related to this Note or in any other agreement or loan I have made with the Lender.

3. Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property or any other of my property in which Lender has a lien. This includes the taking of, garnishing of, or levying on my accounts with the Lender.

4. This Note or any of the related documents cease to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time for any reason.

5. Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

6. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party, or any guarantor, endorser, surety, or accommodation party becomes incompetent or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

If I am in default, the Lender may, among other things as set forth elsewhere in this Note, send me a written notice telling me that if I do not pay the overdue amount by a certain date, perform my obligations under the Note or otherwise correct my default, the Lender may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

## 15. BORROWERS PROTECTION ™ PLAN

(Borrowers Protection Plan is a registered trademark of Bank of America Corporation). If you selected Borrowers Protection Plan, each of the Borrowers covered by the Plan must sign the Optional Borrowers Protection Plan Addendum, which is a part of and incorporated into this Note. Interest is not charged on the fees for the Borrowers Protection Plan.

## 16. COLLECTION COSTS

To the extent permitted by law, I will pay all of your reasonable collection costs, including court costs and attorneys' fees, to enforce my obligations under this Note. You may hire or pay someone else to help collect this Note if I do not pay. I agree to also pay all of your costs and expenses incurred in pursuing your remedies and taking action to protect your security interest in the Property, as mentioned and authorized in the Security Instrument.

JOSEPH F DEROSE JR
NEW JERSEY PROMISSORY NOTE
SECOND LIEN
NJSEC.BOA 09/01/05

DocMagic *eFrms* 800-649-1362
www.docmagic.com

**17. BORROWER'S WAIVERS**

I waive my rights to require the Lender to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Lender if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**18. INTEGRATION**

This Note contains the entire agreement between you and me (except for any terms contained in the federal Truth in Lending Act disclosures and the Itemization of Amount Financed, or when the collateral is real estate and a security interest is given by a separate document or documents) and supercedes any prior understanding or correspondence. It may be changed only in writing signed by you and me.

**19. MISCELLANEOUS**

If this Note represents a renewal, modification, extension, substitution or consolidation of an obligation owed to you, then I acknowledge and agree that there are no claims, setoffs, avoidances, counterclaims, or defenses or rights to claim setoffs, avoidances, counterclaims or defenses to payment or enforcement of the prior obligation. If this Note is a renewal of an existing obligation, then it is the intent of the parties that the Note evidencing the original obligation not be extinguished by the renewal unless required by applicable state law. Our records shall be evidence that this Note is a renewal.

I agree that if this Note is in default, including the failure to make a scheduled payment by the due date, I will accept calls regarding the collection of this Note at any residence or place of employment. The calls can be automatically dialed and a recorded message may be played. I agree such calls will not be "unsolicited calls" for purposes of any federal, state or local law. To improve customer service and security, calls with you may be recorded. I agree that monitoring or recording may be done and that no additional notice to me or additional approval from me is needed. I authorize you, your parent company, Bank of America Corporation (or any successor company) and Bank of America Corporation's affiliates and subsidiaries ("Affiliates") to: (a) obtain other information deemed necessary concerning my credit experience and other information from credit reporting agencies, creditors, and any department of motor vehicle or similar state agency, my employer (past, present and future) and other persons (and all entities may release and/or verify such information to you at any time without notification to me or without my consent), and (b) share information with your Affiliates, except to the extent that I have opted out of such sharing as provided in your Privacy Policy for consumers.

**20. GOVERNING LAW**

In addition to applicable federal law, this Note will be governed by and interpreted in accordance with federal law and the law of the state of   NEW JERSEY           , except for matters related to the exportation of interest (as defined by federal law) which will be governed by and interpreted in accordance with the laws of the State of North Carolina. However, if there is a question about whether any provision of this Note is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision enforceable. The loan transaction which is evidenced by this Note and this Note have been approved, made and funded, and all necessary loan documents have been accepted, by you in the state of North Carolina.

**21. TAX CONSEQUENCES**

I acknowledge that you (including your employees and representatives) have given me no assurances, representations or warranties that the finance charges and other fees and charges paid on my loan are tax deductible. You have advised me to consult my own tax advisor concerning the deductibility of the finance charges and other fees and charges for the loan.

JOSEPH F DEROSE J
NEW JERSEY PROMISSORY NO
SECOND LIEN
NJSEC.BOA 09/01/05                              Page 5 of 7

*DocMagic ePForms* 800-649-1362
www.docmagic.com

**22. RIGHT OF SETOFF**

To the extent allowed by applicable law, you have the right to setoff if I am in default under this Note. Having the right of setoff means that, you may, but do not have to, apply any balance I owe to you against any of my deposits and accounts or securities now or hereafter in your possession or in the possession of any Bank of America affiliate or subsidiary.

**23. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail, addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Lender a notice of my different address.

Any notice that must be given to the Lender under this Note will be given by mailing it by certified mail to the Lender at the address stated at the top of the first page of this Note. A notice will be mailed to the Lender at a different address if I am given notice of that different address.

**24. DELAY IN ENFORCEMENT**

You reserve the right to defer or delay the date certain changes are to occur without notice and without being liable for such delay or deferment. A court decree for divorce or separation or no-court approved mutual agreement does not affect, eliminate or reduce any person's liability under the Note or the loan balance if you are not a party to the decree or agreement.

**25. SEVERABILITY**

If any portion of this Note conflicts with, contradicts or otherwise controverts applicable federal, state, tribal, or local law, then to the extent possible, such portion shall be construed as being consistent with such applicable law, and further will be deemed changed to the extent necessary to accomplish this end. If any such conflicting or contradicting portion of this Note cannot be so construed or changed, it will be deemed severed from this Note and will not affect other provisions of this Note, which shall be given full effect without regard to the conflicting or contradicting portions.

**26. TRANSFER AND ASSIGNMENT**

You may transfer or assign this Note, the Security Instrument and any other loan document relating to the loan evidenced by this Note to any person or entity without notice to me. I may not transfer, assign or delegate my duties under this Note. Subject to applicable law, this Note is binding on me, my successors, heirs and personal and legal representatives.

**27. ASSUMPTION**

This Note is not assumable. This means that someone buying the Property may not take over this Note as his/her own obligation on the terms of this Note or on any other terms.

**28. CAPTION HEADINGS**

Caption headings are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

JOSEPH F DEROSE JR
NEW JERSEY PROMISSORY NOTE
SECOND LIEN
NJSEC.BOA 09/01/05

DocMagic *eForms* 800-649-1362
www.docmagic.com

PRIOR TO SIGNING THIS NOTE I, AND EACH OF US, READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THIS NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED AND EXECUTED COPY OF THIS PROMISSORY NOTE.

Borrower has executed and acknowledges receipt of pages 1 through 7 of this Note.

Witness the signature(s) and seal(s) of the undersigned.

## NOTICE TO BORROWER

Read this promissory note or loan agreement before you sign.

Do not sign this promissory note or loan agreement if it contains blank spaces.

The promissory note or loan agreement is secured by a secondary mortgage on your real property.

_____ (Seal)
JOSEPH F DEROSE JR          -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

JOSEPH F DEROSE JR
NEW JERSEY PROMISSORY NOTE
SECOND LIEN
NJSEC.BOA 09/01/05

DocMagic eForms 800-649-1362
www.docmagic.com

Page 6 of 7

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Kaplin Stewart Meloff Reitet & Stein, P.C.
By: Amy L. SantaMaria, Esquire
457 Haddonfield Road, Suite 310
Cherry Hill, New Jersey 08002
File No.▇▇▇▇▇

| | | |
|---|---|---|
| In Re: | Case No.: | 12-38344 |
| JOSEPH F. DEROSE | Chapter: | 13 |
| | Adv. No.: | |
| | Hearing Date: | February 6, 2013 |
| | Judge: | Michael B. Kaplan |

## CERTIFICATION OF SERVICE

1.  I, _____Amy L. SantaMaria_____ :

    ☑ represent the _____Secured Creditor_____ in the above-captioned matter.

    ☐ am the secretary/paralegal for _____, who represents the
    _____ in the above captioned matter.

    ☐ am the _____ in the above case and am representing myself.

2.  On _____January 30, 2013_____ , I sent a copy of the following pleadings and/or documents to the
    parties listed in the chart below:
    Objections to Confirmation, Proposed Order and this Certification of Service

3.  I hereby certify under penalty of perjury that the above documents were sent using the mode of
    service indicated.

Dated: _____January 30, 2013_____       /s/ Amy L. SantaMaria_____
                                           Signature

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Joseph DeRose<br>295 Savannah Road<br>Toms River, NJ  08757 | Debtor | ❑ Hand-delivered<br>☑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>(as authorized by the court *) |
| William H. Oliver, Jr., Esquire<br>Brandywine Commons<br>2240 Highway 33, Suite 112<br>Neptune, NJ  07753 | Attorney for Debtor | ❑ Hand-delivered<br>☑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>☑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>(as authorized by the court *) |
| Albert Russo<br>Chapter 13 Standing Trustee<br>CN 4853<br>Trenton, NJ  08650-6888 | Trustee | ❑ Hand-delivered<br>☑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>☑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>(as authorized by the court *) |
|  |  | ❑ Hand-delivered<br>❑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>(as authorized by the court *) |

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| | | ❑ Hand-delivered<br>❑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>   (as authorized by the court *) |
| | | ❑ Hand-delivered<br>❑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>   (as authorized by the court *) |
| | | ❑ Hand-delivered<br>❑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>   (as authorized by the court *) |
| | | ❑ Hand-delivered<br>❑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>   (as authorized by the court *) |

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| | | ❑ Hand-delivered<br>❑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>  (as authorized by the court *) |
| | | ❑ Hand-delivered<br>❑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>  (as authorized by the court *) |
| | | ❑ Hand-delivered<br>❑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>  (as authorized by the court *) |
| | | ❑ Hand-delivered<br>❑ Regular mail<br>❑ Certified mail/RR<br>❑ E-mail<br>❑ Notice of Electronic Filing (NEF)<br>❑ Other _____<br>  (as authorized by the court *) |

\* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.

*rev.4/24/12*

KAPLIN STEWART MELOFF REITER & STEIN, P.C.
BY: AMY L. SANTAMARIA, ESQUIRE (AS6092)
457 HADDONFIELD ROAD, SUITE 310
CHERRY HILL, NEW JERSEY  08002
(856) 675-1550
(856) 675-1551 FACSIMILE
OUR FILE NO. ▉▉▉▉

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY (TRENTON)**

| | | |
|---|---|---|
| **In re:** | : | Chapter 13 |
| | : | |
| JOSEPH F. DEROSE | : | Bankruptcy Case No. 12-38344 (MBK) |
| | : | |
| | : | Hearing Date: 2/6/2013 @ 9:30 am |
| | : | |
| | : | **ORDER DENYING CONFIRMATION OF** |
| | : | **THE DEBTOR'S CHAPTER 13 PLAN** |

AND NOW, this        day of        ,2013, upon consideration of the Objections of Secured Creditor, Bank of America, N.A. by its servicer, Green Tree Servicing LLC, to Confirmation of the Debtor's Chapter 13 Plan ("the Objections"), and after notice and an opportunity for a hearing, and it appearing that  cause exists for the relief requested,

IT IS hereby ORDERED that confirmation of the Debtor's Chapter 13 Plan is hereby DENIED and the Debtor IS ORDERED to file an Amended Chapter 13 Plan within        days.

BY THE COURT:

_____
HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY JUDGE